IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHARLES H. VENEY, et al.,

    Cross-Claimants,

v.                                                                                     Civil Action No. 3:10cv542

DEMETRICE E. DOUGLAS,

    Cross-Defendant.

## MEMORANDUM OPINION

Before the Court are Cross-Claimants Charles H. Veney and Levernia Hall ("Charles and Hall") and Cross-Defendant Demetrice E. Douglas's cross-motions for summary judgment. (Docket Nos. 41, 39.) Both motions have been fully briefed. Neither party sought a hearing, and the Court has determined that oral argument would not aid the decisional process. Accordingly, this matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1335, 1367, and 636(c). For the reasons that follow, the Court will GRANT Douglas's Motion for Summary Judgment (Docket No. 39) and will DENY Charles and Hall's Motion for Summary Judgment (Docket No. 41). Accordingly, the Court will DISMISS WITH PREJUDICE the Amended Cross-Claim (Docket No. 27) and will ORDER that the life insurance proceeds deposited with this Court be awarded to Douglas as the rightful beneficiary under the policy.

### I. Summary of the Allegations and Claims Asserted

#### A.     Factual Background

On August 2, 2010, Protective Life Insurance Company ("Protective Life") filed an Interpleader Complaint against Charles, Hall, and Douglas, requesting the Court to resolve

competing claims to insurance proceeds payable under a life insurance policy issued to Sandra M. Veney ("Sandra"). (Docket No. 1.) Charles and Sandra were married, and Hall is their biological daughter. Douglas is Sandra's biological daughter from a previous relationship, but Charles and Sandra raised Douglas together starting at age four.

The Interpleader Complaint alleges that on May 28, 2004 Sandra applied for life insurance with Zurich Life Insurance Company ("Zurich Life"), a company subsequently acquired by Protective Life, naming Charles as the primary beneficiary. Protective Life issued Sandra a life insurance policy in the amount of $200,000. On August 10, 2007, Sandra purportedly signed a change of beneficiary form, naming Douglas as the primary beneficiary of any life insurance proceeds. Sandra died on April 13, 2010, and subsequently, Charles, Hall, and Douglas have made competing claims to the life insurance proceeds. Protective Life has deposited the insurance proceeds with this Court, and the Court entered Judgment of Interpleader in favor of Protective Life, dismissing it from this action with prejudice. (Oct. 22, 2010 Order.) (Docket No. 15.)

### B. Procedural Filings

Douglas contends that she is the true and rightful beneficiary of the proceeds by virtue of the August 10, 2007 change of beneficiary form.

Charles and Hall filed an Amended Cross Claim, asserting five counts against Douglas and requesting that the Court award the life insurance proceeds to Charles. Count I alleges that Douglas forged Sandra's signature on the August 10, 2007 change of beneficiary form. The parties have since entered into a Stipulation of Dismissal, dismissing Count I with prejudice. (Docket No. 33.)

In Count II, Charles and Hall assert that Charles is an irrevocable beneficiary of Sandra's life insurance policy. In support of this claim, Charles and Hall allege that in May 2004, Charles and his wife Sandra "entered into a formal oral agreement whereby each agreed to obtain life insurance in their individual names and to name the other as primary beneficiary." (Am. Cross-cl. ¶ 16.) Pursuant to this alleged agreement, Charles and Sandra submitted applications to Zurich Life for a $200,000 life insurance policy. Sandra's application was approved. When Charles's application was declined, he arranged a life insurance policy through his labor union, naming Sandra as the beneficiary. Charles agreed to pay and did pay the premiums on these policies, using money from his paycheck which was deposited in Charles and Sandra's joint checking account.

In Count III, Charles and Hall claim that Sandra, "without the knowledge, consent, or permission of [Charles], wasted and dissipated the joint assets of the marriage for her personal use . . . ." (Am. Cross-cl. ¶ 60.) Based on this alleged waste and dissipation, Charles and Hall ask the Court to impose a constructive trust over the proceeds of the life insurance policy and reimburse Charles.

Count IV asserts an undue influence claim against Douglas. To support this claim, Charles and Hall allege Douglas exercised undue influence over Sandra to alienate them from Sandra "with full knowledge that Sandra had a life insurance policy in the amount of $200,000 in which Charles was the named beneficiary." (Am. Cross-cl. ¶ 39.) "Therefore, the change of beneficiary by Sandra was not the basis of her own will or desire but was based on the manipulation by [Douglas], obtained through a confidential relationship, thus nullifying the change of beneficiary." (Am. Cross-cl. ¶ 71.)

Finally, Count V asserts unjust enrichment based on the allegations that Charles paid all the premiums on the insurance policy and Douglas exercised undue influence over Sandra. To remedy the unjust enrichment, Charles and Hall request the Court to impose a constructive trust in Charles's favor.

On April 4, 2011, the parties filed cross-motions for summary judgment. Douglas seeks summary judgment as to all remaining counts, whereas Charles and Hall seek summary judgment as to Counts II and III.

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c). On cross-motions for summary judgment, the Court must review each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia*

*Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

### III. Findings of Undisputed Facts[1]

Charles and Sandra were married on September 22, 1973. Douglas, Sandra's eldest daughter, is not biologically related to Charles, but Charles raised Douglas since she was four years old. Hall, Sandra's youngest daughter, is biologically related to Charles.

Early in their marriage, Charles and Sandra established joint banking accounts, and although Charles's paychecks "produced the bulk of the monies in these accounts," both Charles and Sandra contributed to the funds in their joint accounts. (Cross-Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' Mem. Supp.") Ex. 12, Pls.' Supp'l Answers to Def.'s Interrog. No. 5.)

On August 10, 1999, Charles completed an Accidental Death and Dismemberment Insurance Enrollment Form through his union, assigning Sandra as the beneficiary of $75,000 in accidental death and dismemberment insurance proceeds. Charles also had a pension trust fund through his Union, naming Sandra as the primary beneficiary and Hall (but not Douglas) as the contingent beneficiary. On December 30, 2003, Zurich Life declined to issue a life insurance policy to Charles due to his medical history.

---

[1] Because the Court ultimately grants Douglas's Motion for Summary Judgment, the Court recites and views these facts in the light most favorable to Charles and Hall, the nonmoving party.

On May 28, 2004, Sandra completed an application with Zurich Life for a life insurance policy on her own life, naming Charles as the beneficiary.[2] On July 6, 2004, Zurich Life issued Sandra a life insurance policy in the amount of $200,000. The policy provides: "Unless otherwise provided by request, you may change the beneficiary while this policy is in force." (Interpleader Compl. Ex. B, at 7.) The premiums on Sandra's life insurance policy were paid using marital funds from Charles and Sandra's joint banking account.[3]

In September 2006, Sandra was first treated with radiation for what Hall states that Sandra's doctors believed to be noncancerous lumps. However, Sandra was later diagnosed with breast cancer. Despite this diagnosis, serious effects of the illness did not manifest until 2010.

During their marriage, Charles and Sandra "had problems . . . like any normal marriage," but their problems escalated at the end of July or the beginning of August 2007 when Charles discovered that marital assets had been spent by Sandra. (Cross-Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp.") Ex. B, Aug. 5, 2008 Pendente Lite Hr'g Tr. ("Aug. 5, 2008 Tr.") 101:1-

---

[2] Charles claims that he and Sandra entered into an oral contract in May 2004, agreeing to get identical life insurance policies in the amount of $200,000, that Charles would pay the premiums on the policies, and that they would name each other as beneficiaries. However, as discussed below, the Court finds this evidence to be inadmissible under Virginia's Dead Man's Statute. *See infra* Part IV.A. Charles has failed to present any admissible evidence that could give rise to a material fact, whether disputed or undisputed, relating to a May 2004 oral contract between him and Sandra.

[3] While Charles testified that he paid the premiums on Sandra's life insurance policy, he later admitted that the premiums were paid using money from their joint account and he could not establish that only money he contributed paid the premiums. Virginia law presumes that all income acquired by either spouse during the marriage and before the last separation is marital property. *Stainback v. Stainback*, 396 S.E.2d 686, 693 (Va. Ct. App. 1990).

2.) Prior to this discovery, Sandra had withdrawn large amounts of money from their joint account. Although Charles does not know how Sandra spent the money, he states that the money was not applied to any joint or marital obligations.

After Charles's discovery, which he testifies was at the end of July or the beginning of August 2007, Charles closed their joint bank account, and Charles and Sandra began having discussions about separating. On August 10, 2007, a Service Request Form with Protective Life, changing Sandra's beneficiary on her life insurance policy to Douglas, was hand-signed "Sandra Veney." Douglas, at Sandra's instruction, filled out this Service Request Form and changed the address, listing her address instead of the address for Sandra's martial residence.

In April 2008, Charles began sleeping in a different bedroom, eventually moving into the basement of the marital residence. Even though Charles had moved into the basement, he did not want a divorce, and was still "trying to work things out." (Aug. 5, 2008 Tr. 112:25.) However, in early May 2008, Charles left the marital residence and confirmed his intention to permanently separate from Sandra.

On June 17, 2008, Sandra, through her divorce lawyer, filed a complaint for divorce in the Circuit Court of Richmond County, Virginia. Sandra's divorce lawyer, "as a matter of invariable routine," advises clients entering divorce proceedings to change their spousal beneficiary designations as soon as possible. (Def.'s Mem. Supp. Ex. A, Risavi Aff. ¶ 12.) Douglas never accompanied Sandra to her divorce lawyer's office for any purpose.

During the divorce proceedings, Charles propounded interrogatories to Sandra. Sandra provided the factual information necessary to answer these interrogatories, reviewed the answers to ensure accuracy, and signed the answers under oath. On July 22, 2008, in an answer to an

interrogatory from Charles, Sandra listed her life insurance policy through Protective Life, acknowledging Douglas as the beneficiary.

During the August 5, 2008 Pendente Lite Hearing before the Circuit Court of Richmond County, Sandra, while testifying under oath, acknowledged that Charles used to be the beneficiary on her life insurance policy through Protective Life and stated that she had since changed the beneficiary.

In describing Sandra's relationship with Douglas, Charles stated: "[T]hey had some kind of a bond, but nobody understands it. My daughter, Levernia, Sandra's child, she couldn't even understand it. What kind of bond they had together, we couldn't figure it out." (Def.'s Mem. Supp. Ex. C, Charles Dep. 64:21-25.) According to Hall, Douglas "pretty much" got "whatever she wanted." (Pls.' Mem. Supp. Ex. 8, Hall Dep. 23:4-5.) Douglas often spoke poorly of Charles and encouraged Sandra to leave Charles.

Sandra regularly watched over Douglas's two children while Douglas went to work. Sandra also spent a lot of time and money taking care of Hall's child prior to the child's passing.[4]

Although Sandra had received radiation treatments in 2006 and was later diagnosed with cancer, she did not became seriously ill from the cancer until April 2010, and she passed away that same month.

---

[4] Although no dispute exists among the parties that Hall, the Veney's biological child, received a settlement grossing over one million dollars after her child passed, the record contains no undisputed or admissible evidence to support the inference Douglas urges here, which is that Sandra named only Douglas as her beneficiary because Hall had access to that money independently.

## IV. Analysis

The Court's subject matter jurisdiction in this interpleader action flows from diversity of citizenship, pursuant to 28 U.S.C. § 1335. *See Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F. App'x 767, 769 (4th Cir. 2002) ("Statutory interpleader–the type involved here–rests on diversity of citizenship."); *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320-21 (8th Cir. 1991) ("[T]he federal interpleader statute is merely a special brand of diversity jurisdiction."). The Court exercises supplemental jurisdiction over the Virginia state law claims pursuant to 28 U.S.C. § 1367. Accordingly, pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), this Court must apply Virginia substantive law to the allegations raised in this matter. *See Sec. Ins. Co. of Hartford*, 40 F. App'x at 769.

As noted above, Count I has been voluntarily dismissed with prejudice. The Court now proceeds with an analysis of Counts II through V.

### A. Count II: Irrevocable Beneficiary

In Count II, Charles and Hall assert that Charles is an irrevocable beneficiary of Sandra's life insurance policy. Charles, in support of the heart of this claim, has attempted to present evidence demonstrating the existence of a May 2004 oral contract between Sandra, who is now deceased, and himself. Douglas seeks summary judgment on the merits.[5]

---

[5] Douglas moves to dismiss Counts II and III on several grounds, including for failure to name the Estate of Sandra Veney, which Douglas contends is a necessary party. At the same time, Douglas contends that ordering joinder of the Estate at this time would prejudice Douglas because such joinder would precipitate a continuance of the case.

The Court will not address this argument because it is not adequately briefed, and because the case may be disposed of on a more judicially economic basis without harm to Douglas. First, Douglas cannot claim prejudice for failure to name a party when she chose not to file a motion to dismiss the Cross-Claim under Federal Rule of Civil Procedure 12(b)(7). Douglas also cites Virginia law when claiming that the Estate of Sandra Veney is inappropriately omitted from this

"Because state law supplies the rule of decision in this diversity action, the Dead Man's Statute applies pursuant to Rule 601 of the Federal Rules of Evidence."[6] *Dunford Roofing, Inc. v. Earls*, No. 1:00cv25, 2001 WL 396869, at *6 (W.D. Va. Apr. 12, 2001) (*citing Paul v. Gomez*, 118 F. Supp. 2d 694, 695 (W.D. Va. 2000)). Even viewing the evidence favorably to Charles and Hall, they present no admissible evidence supporting their allegations in Count II under Virginia's Dead Man's Statute, and Douglas is entitled to summary judgment as a matter of law.

---

claim and fails to provide an argument under Federal Rule of Civil Procedure 19 as to why the Estate is a necessary or indispensable party. As such, the Court declines to consider this basis for dismissal.

Douglas also moves to dismiss Count II for failure to file the claim within the necessary statute of limitations. In support of this argument, Douglas contends that the statute of limitations began to accrue on the date the beneficiary changed on August 10, 2007, barring this claim. In response, Charles and Hall argue that the statute of limitations began to accrue on the date of Sandra's death in 2010, making this claim timely. It appears to the Court that the cause of action might also have accrued at the time Charles knew or should have known about the change of beneficiary, when Sandra indicated that she had done so as part of their divorce proceeding. That July 2008 date might make this claim timely. Regardless, the Court cannot dispose of this claim based on Douglas's statute of limitations argument because the parties have not pointed to binding case law as to the applicable accrual date. This Court makes no finding as to the applicable accrual date for the circumstances at bar.

Finally, Douglas moves to dismiss Count II based on an implied condition argument, asserting that if an oral contract existed, it contained an implied condition making the contract enforceable only if the parties remained husband and wife. Because the Court finds no admissible evidence suggesting the existence of the oral contract, the Court need not consider Douglas's implied condition argument.

Because the case can be dismissed without prejudice to the Estate of Sandra Veney, and because judicial economy favors determination of the claims without further briefing, the Court must turn to the merits of the case in assessing the parties' positions.

[6] Federal Rule of Evidence 601 provides:

> Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

Fed. R. Evid. 601.

Virginia's Dead Man's Statute provides in relevant part:

> In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony.

Va. Code § 8.01-397. "Under the statute, 'testimony is subject to the corroboration requirement if it is offered by an adverse or interested party and if it presents an essential element that, if not corroborated, would be fatal to the adverse party's case.'" *Jones v. Williams*, 701 S.E.2d 405, 406-07 (Va. 2010) (*quoting Johnson v. Raviotta*, 563 S.E.2d 727, 731 (Va. 2002)). To be corroborative, the evidence presented "must be independent of the surviving witness. It must not depend upon his credibility or upon circumstances under his control. It may come from any other competent witness or legal source, but it must not emanate from him." *Va. Home for Boys & Girls v. Phillips*, 688 S.E.2d 284, 288 (Va. 2010). The United States Courts of Appeals for the Fourth Circuit described the corroboration requirement under Virginia's Dead Man's statute, stating:

> "Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated–that is, such as tends to show the truth, or the probability of its truth. . . . Such evidence need not emanate from other witnesses but may be furnished by surrounding circumstances adequately established. . . . Nor is it essential that an adverse or interested party's testimony be corroborated on all material points. . . ."

*Ruhland v. Copperstone Ctr. Med. Assocs.*, No. 87-2219, 1989 WL 21351, at *2 (4th Cir. Mar. 1, 1989) (*quoting Brooks v. Worthington*, 143 S.E.2d 841, 845 (Va. 1965)) (omissions in original).

Charles has testified that he and Sandra entered into an oral contract in May 2004, agreeing that they would both get identical life insurance policies in the amount of $200,000, that they would name each other as beneficiaries, and that Charles would pay the premiums on the

11

policies. Pursuant to this alleged oral contract, Charles claims he was an irrevocable beneficiary. Charles and Hall contend Charles's testimony is properly corroborated. The Court, however, finds that Charles's testimony is not sufficiently corroborated under Virginia's Dead Man's Statute.

First, the written records in this case largely contradict Charles's testimony that pursuant to a May 2004 oral contract with his wife he attempted to get an identical life insurance policy in the amount of $200,000. Nothing in the records corroborates Charles's claim that he sought to get more insurance through his union pursuant to this alleged May 2004 oral contract. The records instead show that Charles applied at some point in 2003, at least six months prior to any alleged oral contract, for life insurance. He was rejected. Further, the written records indicate that Charles's union benefits pre-date the purported oral contract. Charles had an Accidental Death and Dismemberment Insurance Policy through his union dating back to 1999, and a pension trust fund dating back to at least 2000. Charles listed Sandra as the beneficiary for the Accidental Death and Dismemberment Insurance Policy. For the pension trust fund, Charles named Sandra beneficiary, but listed only Hall–not Douglas–as a contingent. The fact that Sandra remained the named beneficiary on Charles's union benefits until her death is insufficient corroboration standing alone. This is especially true considering the fact that the written record largely contradicts Charles's testimony regarding the existence of the alleged oral agreement.

Second, any evidence that emanates from or is dependent on Charles cannot serve as corroboration. Thus, Charles's testimony that he paid all the premiums on Sandra's life

insurance policy cannot constitute corroboration for the existence this oral agreement.[7] Likewise, Hall's testimony regarding the alleged oral contract cannot serve as corroboration because Hall admitted that her knowledge of the oral contract stemmed from Charles, and not Sandra.

Finally, Sandra's testimony at the August 5, 2008 Pendente Lite Hearing before the Circuit Court of the County of Richmond does not affirm, or even tend to affirm, the existence of an oral contract. Sandra and Charles's counsel engaged in the following dialogue during the divorce proceedings:

> Q. Do you have a life insurance policy on your life at Protective Life Insurance?
> A. I do.
> Q. Who's paid the premiums on that life insurance policy?
> A. We both paid the premium on it.
> Q. Who is "we both"?
> A. Charles and myself.
> Q. How long did Charles pay the premiums on this?
> A. I don't know how long he's paid them.
> . . . .
> Q. And was it your understanding when you got the policy that he was to pay the premiums and he was to be the beneficiary?
> A. My understanding, he was the beneficiary at the time, yes.
> Q. Is he the beneficiary now?
> A. No.

(Aug. 5, 2008 Tr. 85:2-22.) Sandra's testimony does not corroborate Charles's testimony regarding the oral contract, and instead, merely confirms that at one point she had listed Charles as the beneficiary of her life insurance policy. Her testimony cannot give rise to any other reasonable inference. The record is equally clear that, even after retaining counsel, Sandra confirmed that the beneficiary changed to Douglas.

---

[7] Charles's testimony also cannot withstand legal review. It is clear from the undisputed record that the money used to pay the premiums consisted of marital funds, not solely Charles's funds. *See Stainback*, 396 S.E.2d at 693.

13

The Court thus finds Charles's uncorroborated testimony regarding the alleged May 2004 oral contract to be inadmissible pursuant to Virginia's Dead Man's Statute. Absent Charles's testimony, Charles and Hall have presented no admissible evidence supporting Count II.[8] Even viewing the evidence favorably to Charles and Hall, Douglas is entitled to summary judgment as a matter of law on Count II based on the undisputed admissible evidence before this Court. The Court will thus DISMISS Count II.

### B.   Count III:  Waste and Dissipation

In Count III, Charles and Hall ask the Court to impose a constructive trust over the life insurance proceeds to reimburse Charles in light of Sandra's waste and dissipation of marital assets. Douglas seeks summary judgment on the merits, arguing that no material factual dispute exists and that, as a matter of law, she is entitled to judgment in her favor. Even assuming a court could consider waste and dissipation as an independent claim outside the scope of ordering an equitable distribution in divorce cases,[9] viewing the facts favorably to Charles and Hall, the

---

[8] In summary judgment briefing, Charles and Hall also present a separate argument in support of their claim in Count II. Charles and Hall assert that Sandra did not have the legal right to change the beneficiary of her insurance policy for two reasons: (1) the premiums on the life insurance policy were paid out of Charles and Sandra's joint account; and, (2) Douglas, the new designated beneficiary, cannot qualify as a beneficiary because she did not make any payments on the life insurance policy. The cases cited by Charles and Hall do not lend credence to these arguments and are factually distinguishable to this matter. Moreover, factually, the source of the premium payments does not direct whom the beneficiary can be in the way Charles and Hall suggest.

[9] Douglas also moves to dismiss Count III on the ground that a claim for waste or dissipation can only be asserted in divorce proceedings in the equitable distribution context. While Douglas cites many cases assessing waste or dissipation within the equitable distribution context, she fails to cite any case law suggesting that no independent claim for waste or dissipation can be brought in the constructive trust context. Regardless, the Court declines to decide this issue because this claim can easily be disposed of on the merits.

record evinces no evidence of, or material dispute as to, waste or dissipation as defined by Virginia law, meaning that Douglas is entitled to summary judgment as a matter of law.

Virginia law instructs:

> Dissipation [or waste] occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage *at a time when the marriage is undergoing an irreconcilable breakdown*." Once the aggrieved spouse shows that marital funds were either withdrawn or used *after the breakdown*, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose.

*Clements v. Clements*, 397 S.E.2d 257, 261 (Va. Ct. App. 1990) (*quoting Hellwig v. Hellwig*, 426 N.E.2d 1087, 1094 (Ill. App. Ct. 1981)) (emphasis added). Virginia case law "uniformly holds that the challenged use of funds must be 'in anticipation of divorce or separation . . . [and] at a time when the marriage is in jeopardy.'" *Smith v. Smith*, 444 S.E.2d 269, 272 (Va. Ct. App. 1994) (*quoting Booth v. Booth*, 371 S.E.2d 569, 572 (Va. Ct. App. 1988)) (alterations in original). Thus, a claim for dissipation or waste cannot lie where the challenged expenditures occurred during the normal course of marriage. *Attiliis v. Attiliis*, No. 1087-08-4, 2009 WL 1586019, at *5 (Va. Ct. App. June 9, 2009).

The undisputed factual evidence before the Court establishes that while Charles and Sandra "had problems . . . like any normal marriage" (Aug. 5, 2008 Tr. 101:1-2), their problems escalated at the end of July or the beginning of August 2007 because Charles discovered that marital assets had been spent by Sandra. Charles quickly closed their joint bank account upon making this discovery, and the couple then began discussing a separation. The record, even presuming facts in favor of Charles, makes clear that the alleged waste and dissipation did not occur at a time when the marriage was undergoing an irreconcilable breakdown and instead establishes that the alleged missing marital assets caused the irreconcilable breakdown in the

15

marriage. Virginia law clearly establishes that "at least until the parties contemplate divorce, each is free to spend marital funds." *Booth*, 371 S.E.2d at 572; *see Smith*, 444 S.E.2d at 272 (declining to extend Virginia's waste or dissipation doctrine to cover expenditures related to a fifteen-year extramarital affair "which were not specifically for the purpose of depleting the marital estate and where there was no evidence that there was an irreconcilable breakdown of the marriage"). Because the undisputed evidence demonstrates that the challenged expenditures occurred before any irreconcilable breakdown of the marriage, Charles and Hall have failed to create any material dispute that would prevent summary judgment as a matter of law. Thus, the Court will DISMISS Count III of the Cross-Claim.

### C. Count IV: Undue Influence

Charles and Hall seek to set aside the change of beneficiary under Count IV by alleging that "the change of beneficiary by Sandra was not the basis of her own will or desire but was based on the manipulation by [Douglas], obtained through a confidential relationship, thus nullifying the change of beneficiary." (Am. Cross-cl. ¶ 71.) Douglas moves for summary judgment as to Count IV, arguing that based on the undisputed facts before the Court, she is entitled to judgment as a matter of law. Even viewing the evidence in the light most favorable to Charles and Hall, the Court agrees that they have failed to present evidence of, or create a material dispute as to, undue influence sufficient to overcome summary judgment.

Because direct evidence of undue influence is difficult to produce, Virginia courts have "identified two situations . . . sufficient to show that a . . . party's free agency was destroyed, and, once established, shift the burden of production . . . ." *Estate of Parfitt v. Parfitt*, 672 S.E.2d 827, 829 (Va. 2009). The first situation occurs "'[w]here great weakness of mind concurs with

gross inadequacy of consideration, or circumstances of suspicion, the transaction will be presumed to have been brought about by undue influence.'" *Id.* (*quoting Fishburne v. Ferguson's Heirs*, 4 S.E. 575, 582 (Va. 1887)). The second instance arises when a confidential relationship exists, such that:

> "one person stands in a relationship of special confidence towards another, so as to acquire an habitual influence over him, he cannot accept from such person a personal benefit without exposing himself to the risk, in a degree proportioned to the nature of their connection, of having it set aside as unduly obtained."

*Id.* (*quoting Bailey v. Turnbow*, 639 S.E.2d 291, 293 (Va. 2007)). A confidential relationship exists where there is:

> an agency relationship in which one party is bound to act for the benefit of another and can take no advantage to himself, or between family members when one member bears also an attorney-client relationship to another member, or "when one family member provides *financial advice* or *handles the finances* of another family member."

*Bailey*, 639 S.E.2d at 293-94 (*quoting Friendly Ice Cream Corp. v. Beckner*, 597 S.E.2d 34, 40 (Va. 2004)) (footnote omitted).

The challenged document before this Court is an August 2007 change of beneficiary form, in which Sandra changed the beneficiary from Charles to Douglas. The undisputed factual record is bereft of any evidence demonstrating that Sandra's free agency was destroyed at the time this document was completed. Even presuming facts in favor of Charles and Hall, no evidence or material dispute before this Court suggests that Sandra was mentally feeble as of August 2007. Although Sandra had been diagnosed with cancer, no evidence suggests the cancer affected her mental capacity to understand the nature of the document. Nothing on this record, even viewing facts favorably to Charles and Hall, establishes the existence of a confidential relationship, as defined by Virginia law, between Sandra and Douglas. *Bailey*, 639 S.E.2d at 293

("[A] close family relationship, even the relationship of parent and child, will not, alone, give rise to a confidential relationship creating a presumption of undue influence."). Even assuming that Douglas often got her way, took advantage of Sandra's willingness to care for Douglas's children, and encouraged Sandra to leave Charles, this evidence is insufficient as a matter of law to show undue influence.

Under certain circumstances, the undisputed fact that Douglas filled out the change of beneficiary form and listed her address instead of Sandra's might be suggestive of undue influence. The undisputed evidence in this case, however, contains two post-August 2007 instances in which Sandra, under oath, acknowledges the change of beneficiary designation, and did so with the benefit of legal counsel. On July 22, 2008, after having the opportunity to consult with her divorce lawyer, Sandra acknowledged that Douglas was the beneficiary under her life insurance policy in response to Charles's interrogatory. On August 5, 2008, Sandra testified under oath in state court that she changed the beneficiary on her life insurance policy. Sandra's attorney confirms under oath not only that her invariable routine would have been to advise a client to change a spousal beneficiary designation immediately, but she also confirms that Douglas played no part–must less any influential role–in answering the interrogatory in this fashion. The only reasonable inference supported by the undisputed evidence is that Sandra, by her own free will, changed the beneficiary on her life insurance policy to Douglas. Count IV will thus be DISMISSED.

### D. Count V: Unjust Enrichment

In Count V, Charles and Hall ask the Court to impose a constructive trust over the life insurance proceeds to prevent unjust enrichment, arguing that Charles paid all the premiums with

the understanding that he was to be the beneficiary and that Douglas exercised undue influence over Sandra in obtaining the change of beneficiary. Douglas seeks summary judgment on the merits, arguing that, as a matter of law, unjust enrichment cannot lie under the undisputed facts of this case. The Court grants Douglas's motion as to this Count as well.

Under Virginia law, quasi-contract is the "equitable remedy thrust upon the recipient of a benefit under conditions where that receipt amounts to unjust enrichment." *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990). A plaintiff asserting unjust enrichment must demonstrate the following three elements to establish a quasi-contract: "(1) A benefit conferred on the defendant by the plaintiff; (2) Knowledge on the part of the defendant of the conferring of the benefit; and (3) Acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Id.* at 744-45.

Charles and Hall first claim that Charles, by paying all the premiums on Sandra's life insurance policy, conferred a benefit on Sandra with the understanding that he would be the beneficiary. Charles and Hall assert it is inequitable to allow Sandra to retain the benefit of these paid premiums while allowing her to change the beneficiary to Douglas and request that the Court reimburse Charles for the amount of the premiums. However, the undisputed evidence shows that the premiums on Sandra's life insurance policy were paid using marital funds from Charles and Sandra's joint bank account. The Court cannot find, nor does any genuine or material dispute suggest, that Charles conferred a benefit on Sandra under inequitable circumstances.

Charles and Hall next contend that Douglas has retained an unjust benefit by virtue of her exercising undue influence over Sandra. This Court, however, has already found that Charles

and Hall have failed to show undue influence. *See supra* Part IV.C. Thus, even viewing facts favorably to them, Charles and Hall have failed to raise a genuine or material dispute of fact, and Douglas is entitled to judgment as a matter of law as to unjust enrichment, and no quasi-contract can lie. Accordingly, the Court will DISMISS Count V.

## V. Conclusion

For the foregoing reasons, the Court will GRANT Douglas's Motion for Summary Judgment (Docket No. 39) and will DENY Charles and Hall's Motion for Summary Judgment (Docket No. 41). Accordingly, the Court will DISMISS WITH PREJUDICE the Amended Cross-Claim (Docket No. 27) and will ORDER that the life insurance proceeds deposited with this Court be awarded to Douglas as the rightful beneficiary under the policy.

An appropriate Order shall issue.

/s/ 
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 4-29-11